## BROCKWAY V. THE STATE.

36 629
73 371

1. SALOON-KEEPER: *License revoked for permitting gaming.*
    The keeper of a dram-shop was convicted of knowingly permitting gaming in his house, and judgment rendered, revoking his license as a saloon-keeper. The evidence did not disclose that he was licensed to keep a saloon. *Held:* If he had no license, he was not prejudiced; if he had license, and was rightfully convicted, it was properly revoked.

2. SAME: *Keeping gaming-house.*
    Where the keeper of a dram-shop rents a room adjoining his dram-shop, and connected with it by a doorway, understanding that it is to be used by the lessee for gaming purposes, and permits the game of faro to be carried on in that room, under his observation, he is guilty of knowingly permitting gaming to be carried on in his house.

3. PRACTICE IN CIRCUIT COURT: *Introducing testimony after instructions given.*
    A motion to introduce further testimony after the evidence is closed and the instructions commenced, is addressed to the discretion of the court.

APPEAL from *Jefferson* Circuit Court.
Hon. X. J. PINDALL, Circuit Judge.

*C. B. Moore, Attorney General,* for appellants:
Relied upon *Gantt's Digest, secs.* 1594, 1557, 1560, 1594, in support of the instructions and verdict.

ENGLISH, C. J. On the twenty-first of May, 1880, C. G. Brockway was indicted in the circuit court of Jefferson county, for knowingly permitting gaming in his house. The indictment charged, in substance:

"That said C. G. Brockway, on the tenth of January, 1880, in the county of Jefferson, etc., did, then and there, having a license under the laws of the state, etc., to keep a dram-shop, or grocery, in said county, knowingly and un-

lawfully permit one person, whose name is to the grand jurors unknown, to play at a certain gaming device, then and there exhibited and played at by him, the said person whose name. is to the grand jurors unknown, within the house of him the said C. G. Brockway, which said gaming device is commonly called a faro-bank; contrary to the statute," etc.

The defendant was tried at the July term, 1880, on plea of not guilty; the jury found him guilty, and assessed his punishment at a fine of $100. The court rendered judgment for the fine, and also revoking his license as a saloon-keeper. Defendant moved for a new trial, which the court refused, and he took a bill of exceptions, and appealed.

On the trial, William Carroll, witness for the state, testified, in substance, that he knew the building of defendant in which he was keeping a saloon, and had been for several years. He had seen a game of faro played in the building of defendant. The building in which his saloon is kept is on the south side of Barraque street (Pine Bluff), between Main and Fayette, and runs back to the open alley.

Here the witness drew a diagram of the building, which was shown to the jury, and is copied in the bill of exceptions. From this diagram it appears that the saloon-building was divided into four apartments (taking no notice of the wholesale and retail liquor house on one of its sides), called the front or bar-room, the large room next to it, the room designated as No. 1, and back of it room called No. 2. The bar-room was entered through the front door, from which there was a door into the large room, and from it two doors into room No. 1, and from it a door into room No. 2, which had a door opening on to the alley in the rear of the building.

After describing the four rooms of the building, and the doors opening from one room into another, as shown in

the diagram, William Carroll further testified, that within the last twelve months, and since the first of January, 1880, he had seen a game of faro played in room No. 2, and that defendant was in the large room at the time, but he had never seen him in the room where the game was exhibited.

That there was an open way from the bar to the faro-room, the doors of all the rooms being kept open while the game was being played.

James White also testified to the above facts (the bill of exceptions states); and, further, that he had seen defendant in the room where faro was played, when the game was going on. That during the month of January, 1880, he had seen a game of faro played in room No. 2, and defendant was present at the time. That the large room was used as a pico-room. That Leon Levy and Arthur O'Conner had used said room No. 2 for exhibiting a faro-bank since October, 1879, and it was part of defendant's house. Witness talked to defendant about the game when it was being played, and he knew it was being played. There is an open doorway from the bar to the faro-room.

Leon Levy, witness for defendant, testified, that he leased room No. 2 from defendant, November 20, 1879, and produced the lease, which was read in evidence against the objection of the state.

The lease is dated the twentieth of November, 1879, and by it, defendant rented and let to Leon Levy, for six months, at $10 per month, to be paid on the first day of each month, the two rooms in the rear of his (defendant's) place of business, on Barraque street, city of Pine Bluff, with a clause of forfeiture if the rent should not be paid as stipulated.

Leon Levy further testified, that under this lease he had full control of said room No. 2. That defendant had nothing to do with it. That when he leased it he did not tell

defendant that he wanted it for gaming purposes, nor what
he wanted with it. When he rented the room, he did not
know what he would do with it himself. He paid the rent
regularly, and kept it until his lease expired. No faro-
bank had been exhibited in said room in twelve months,
except what was exhibited there by him while he had it
leased. He took it November 20, and kept it until his
lease was out. Defendant had said to him that he could
not allow any gambling in the room, but witness had rented
the room, and was going to do what he pleased with it.
That the room was not under the same roof of the Brock-
way saloon, but was an adjoining room to the saloon-build-
ing, connected by a door, and connected with the main
building by said door, the roof intersecting the wall. That
the main entrance was from the alley.

*On cross-examination*, he further testified, that defendant
leased the large room to W. N. Portis, who during the fall
and winter exhibited a *keno* bank in it, and defendant knew
that it was being done, as he was frequently in said room.
Defendant never tried to stop witness from running his
faro bank in room No. 2 in the diagram. He simply re-
marked to witness one time that he did not want any gam-
bling in this house. It was about that time Portis opened his
*keno* bank in the large room, the same room in which he
exhibited the game of *pico*, after he quit the *keno* bank
exhibiting.

The above being all the evidence introduced, three
instructions were moved for the state, to each of which
defendant objected. The court refused the first, and gave
the second and third, which follow :

"Second. If the jury believe from the evidence that
Brockway did rent or lease the room to Levy, and that he
knew that Levy was running a faro-bank in said room, and

still knowingly permitted it to be run, if it was attached to his dram-shop, he can not successfully plead this defense.

"Third.   The jury may determine the guilt or innocence of the defendant from the circumstances in evidence, as well as from the observation of witnesses, as shown by the testimony."

For defendant, five instructions were asked, all of which were given, except the first.   They follow :   .

"First.   If the jury believe from the evidence that prior to the exhibition of the game of faro in the building disclosed by the testimony, defendant leased the same to Leon Levy for six months, and the game was only played there during that period, they may find the defendant not guilty." Refused.

"Second.   If the jury believe from the evidence that Leon Levy was the lessee of the building in which the game of faro is charged to have been played during all the period the game was played there, and that Brockway had no control over the same, and that Leon Levy did not disclose to Brockway the use he intended to apply said building to, and that the uses to which he applied it were all after the execution, and before the expiration of the lease, they may acquit the defendant.

"Third.   Usual instruction giving defendant the benefit of doubts.

"Fourth.   The jury must determine this case from the evidence derived from the witnesses, and not from any individual opinion formed outside of the testimony.   .

"Fifth.   The testimony must show that the game charged was exhibted in the saloon or dram-shop of defendant before they can find the defendant guilty."

The court of its own motion instructed the jury as follows, against the objection of defendant :

"If the jury believe from the evidence that the defendant

could, by closing the door, have disconnected the room from his dram-shop, and that he knowing the room was being used for playing faro-bank, left an open and free passage from and through his dram-shop into the room, there being another entrance to the room, this is a circumstance proper to consider in determining whether defendant knowingly permitted such game to be played in his house."

When the court read this instruction to the jury, defendant then offered to read in evidence the following lease:

"I, C. G. Brockway, of, etc., having this day let and leased unto W. N. Portis, of, etc., all that part of my building on Barraque street, in the city of Pine Bluff, known as my "White saloon," in the rear of my bar-room for a period of six months, the said Portis is to pay me $25 per month in advance for said premises, and if he fails to pay rent, this lease is to cease at my option, and all said Portis' rights to be forfeited to me. The said Portis shall have a right to enter through the bar-room aforesaid to said part of the building leased to him at any time said bar-room is open, but said Portis shall not have any right to have said bar-room open except when I see proper. This October 30, 1879."

The lease was signed by defendant, and under it written an acceptance of its terms, signed by Portis.

The court excluded the lease, and defendant excepted.

The motion for a new trial was on the grounds:

1. Verdict contrary to law and evidence.

2. Court erred in giving second and third instructions moved for state.

3. In refusing defendant's first instruction.

4. In giving the instruction of its own motion.

5. In excluding the Portis lease.

6. In rendering an illegal judgment.

I. The statute provides that:

"If the owner or occupant of any house, out-house, or other building, or steamboat, or other vessel, shall knowingly permit or suffer any of the before-mentioned games, tables, or banks, or shall suffer any kind of gaming, under any name whatsoever, to be carried on or exhibited in their houses, or out-houses, or other buildings, or on board of any steamboat, flat-boat, keel-boat, or other vessel, on any of the waters within this state, on conviction thereof, every such owner or occupant shall be fined in any sum not less than one hundred dollars, and may be imprisoned not less than thirty days, nor more than one year." *Gantt's Digest, sec. 1560.*

*Faro-bank* is one of the " before-mentioned" gambling devices. *Ib., sec. 1557.*

Section 1594, Gantt's Digest, provides that:

"If any person having a license to keep a tavern, or dram-shop, shall knowingly permit any person to play at any game of cards, dice, or other gaming device, within his house, out-house, curtilage, or inclosure, he shall be deemed guilty of a misdemeanor, and, on conviction, in addition to the punishment prescribed by law for such offenses his license shall be canceled."

1. SALOON-KEEPER: License revoked for permitting gaming.

It does not appear from the bill of exceptions that it was proved that appellant had license. That seems to have been taken for granted, as he could not lawfully keep a bar, dram-shop, or saloon, without license. The judgment revoked this license " granted to him by the county court," as the statute provides on conviction of the offense of which he was charged. If he had no license he was not prejudiced by so much of the judgment as was intended to revoke his license. If he had license, and was rightfully found guilty of the offense charged, knowingly permit-

ting the game of faro to be played in his dram-shop, or grocery-store, his license was properly revoked.

2. SAME:
Keeping gaming-house.

II. It was proved that appellant kept a *saloon* in the house—kept a *bar* in the front room. The jury doubtless understood the words *saloon* and *bar*, taken in their connections, as meaning dram-shop or grocery.

The house consisting of four connected rooms, seems to have been used for saloon and gaming purposes, and no other. There was an open doorway from the bar-room in front, to the gaming-rooms back. There was evidence from which the jury might have inferred, and they no doubt believed, that when appellant rented room No. 2 to Leon Levy, he understood that it was to be used for gaming purposes, and with but a seeming objection on a single occasion, permitted the game of faro to be carried on in that room, under his observation, for six months. There was evidence to warrant the verdict. It does not, in the slightest degree, shock our sense of justice.

III. The judgment of the court is, that the instructions taken altogether, fairly submitted to the jury the question whether appellant knowingly permitted the game of faro to be played in his dram-shop, or grocery house, as charged in the indictment.

3 PRACTICE:
Admitting evidence after instructions given.

IV. The offer of appellant to introduce the lease to Portis, after the evidence was closed, and the instructions announced, was addressed to the discretion of the court. It could have been no benefit to appellant if admitted. It tended to show that appellant had agreed to give the right of entry through his bar-room to the room back of it used by Portis for gaming. It is an unfavorable feature in the case for appellant that there was, by his permission, an open doorway from his bar to both gaming-rooms in the rear.

Upon the whole case, the judgment must be affirmed.